# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JENNIFER MCELROY,<br>     Plaintiff,<br><br>     v.<br><br>FIDELITY INVESTMENTS<br>INSTITUTIONAL SERVICES<br>COMPANY, INC., and FIDELITY<br>FINANCIAL ADVISOR SOLUTIONS,<br>     Defendants. | C.A. No. 15-287-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Jennifer McElroy's former employer Fidelity Investments Institutional Services Company, Inc. ("Fidelity") and Fidelity Financial Advisor Solutions ("FFAS") move for summary judgment of Ms. McElroy's claims for gender discrimination, retaliation, and breach of contract. This motion raises issues of the applicable statute of limitations for breach of a contract that contains compensation provisions and the factual and legal elements required to assert gender and family and medical leave claims in the employment setting.

*Facts*[1]

Ms. McElroy worked for Fidelity for almost seventeen years. In 2004, she began work as an internal wholesaler. Her primary responsibilities were to prospect

---

[1] The Court recites "the facts of record and all reasonable inferences therefrom in the light most favorable to the nonmoving party." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010).

for new business within the corporate market. She worked in FFAS, a business unit within Fidelity now known as Fidelity Institutional Asset Management. FFAS had two channels of distribution, intermediary and direct. Within FFAS is the Fidelity Institutional Liquidity Management Solutions group ("FILMS").

In 2009, Ms. McElroy became regional vice president, a wholesaler role in which Ms. McElroy's primary responsibility was to manage existing client relationships. She worked in the intermediary channel with banks and broker dealers to provide updates, market information, product information, and to assist intermediaries with opportunities to bring in new business to Fidelity.

Ms. McElroy had a contract with Fidelity that set forth the plan for the payment of commissions to her.[2] The plan set forth the calculation of commissions, bonuses, and other incentives based on determinations by Fidelity of the plan payout. In January 2012, Fidelity informed Ms. McElroy that it had overpaid her 2011 commissions to the tune of $61,149.29. Ms. McElroy requested information about the overpayment, but no significant information was ever forthcoming. When asked to sign a repayment letter, Ms. McElroy refused. She objected to any deductions or repayment claiming it would not be legitimate. Despite her protestation, Fidelity unilaterally deducted 75% of the total amount it alleged it overpaid Ms. McElroy from her paychecks.

---

[2] This is Fidelity's 2011 CBU Wholesaler Intermediary Markets Compensation Plan.

At the beginning of the summer in 2012, Ms. McElroy's supervisor, William Pickens,[3] informed her that Fidelity was going to promote her by the end of that year at the next promotional cycle. The promotion was to include a title change and $50,000 more in compensation. Mr. Pickens had the same discussion with a male employee, Jason Campellone, who was functioning in the same area of responsibility as Ms. McElroy but was based in Atlanta and covered the Southeast territory.[4]

In the fall of 2012, Ms. McElroy, while serving as regional vice president, informed her supervisor Mr. Perkins and his supervisor Joyce Marsilia that she was pregnant and planned to take a medical leave due to her pregnancy under the Family and Medical Leave Act ("FMLA").[5]

A few weeks later, at the end of 2012, Mr. Pickens informed Ms. McElroy that the promotion and raise she had been expecting was not going to take place. He told her that there would be no promotions because Fidelity was experiencing challenging market conditions. Despite this representation, Fidelity promoted a male employee, James Scalisi, from a regional vice president in the direct channel of the FILMS group to vice president—the same level promotion that Fidelity had promised to Ms. McElroy. Mr. Scalisi had not asked for parental or other medical leave.

---

[3] Mr. Pickens was senior vice president in the FILMS group. He reported to Joyce Marsilia who was executive vice president of the FILMS group, who in turn reported to the president of FFAS.

[4] Fidelity promoted Mr. Campellone shortly after Ms. McElroy's separation from the company in May 2014.

[5] This was Ms. McElroy's second FMLA leave. She had taken a previous leave at the end of 2007.

Mr. Pickens acknowledged that the same economic factors that affected Ms. McElroy's promotion also affected Mr. Scalisi's position.

Ms. McElroy began her FMLA leave when her child was born in the spring of 2013. In October 2013, after she returned from her FMLA leave, she initially returned to her position as a regional vice president. Shortly thereafter, Mr. Pickens informed Ms. McElroy that a senior vice president in charge of managing client relationships in New York and New Jersey was vacating her position. This position was two pay grades higher than Ms. McElroy's. He asked Ms. McElroy to cover this position on a temporary basis while they searched for a permanent employee. Fidelity describes this as a reward "for ten years of solid work by giving her the interim opportunity to take over a job two grades above her current role, with the hope that she would win the spot on a permanent basis." ECF No. 20-1 at 1.

Ms. McElroy agreed, despite the fact that she considered this position less desirable than her existing position, as it entailed extra travel and increased work responsibilities while a new parent. Ms. McElroy served in this position for eight months yet she never received the position's $375,000 established base salary (which was $200,000 greater than the base salary of her old position).

In January 2014, Ms. McElroy informed Mr. Pickens and Ms. Marsilia that she would not apply to fill permanently the position she was temporarily occupying and that she would like to return to her old job as soon as they hired someone permanently. Four months later, Ms. McElroy again inquired about the status of Fidelity filling the position so that she could return to her regular position. She

explained that this temporary position was causing her undue hardship. Mr. Pickens told Ms. McElroy that Fidelity had eliminated her old position, despite having assured her for weeks that it was open and that Fidelity was holding it open for her.

Ms. McElroy resigned in May 2014. She claims that Fidelity constructively discharged her. She did not receive any severance.

*Procedure*

Ms. McElroy filed suit against Fidelity and FFAS. She alleges in her suit that Fidelity: 1) discriminated against her for being pregnant and for notifying her boss that she planned to become pregnant again at some point in the future; 2) retaliated against her because she previously took and would likely again take FMLA leave; and 3) breached its contract with her by recouping tens of thousands of dollars of an alleged commission overpayment.[6]

Fidelity and FFAS have moved for summary judgment (ECF No. 20), to which Ms. McElroy objects (ECF No. 34), and the Defendants reply (ECF No. 39).

*Legal Standard*

"Summary judgment is a drastic remedy because it deprives the parties of the opportunity to have a jury determine the outcome as enshrined in the Seventh Amendment to the United States Constitution." *Colman v. Faucher*, 128 F. Supp. 3d

---

[6] Ms. McElroy's claims are under the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 (Count I); the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 (Count II); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (Count III); the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-48-1 (Count IV); the Family and Medical Leave Act, 29 U.S.C. § 2601 (Count V); and breach of contract (Count VI).

487, 490 (D.R.I. 2015) (footnote omitted). Per Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To determine whether there is a genuine dispute as to a material fact, the Court must assess whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the facts in the light most favorable to the nonmoving party. *Audette v. Town of Plymouth, Mass.*, 858 F.3d 13, 20 (1st Cir. 2017). Furthermore, "[t]he Court does not 'weigh the credibility of the testimony,' but presumes 'that a rational factfinder would accept it as stated by the witness.'" *Delgado v. Pawtucket Police Dep't*, 747 F. Supp. 2d 341, 349 (D.R.I. 2010) (quoting *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 68 (1st Cir. 2002)). The moving party bears the burden of identifying the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to identify at least one genuine issue of material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994).

## I.    Defendant FFAS

Defendants assert that FFAS is not a properly named Defendant because it is not a separately incorporated entity, but rather is merely a division within Fidelity. Ms. McElroy does not present any factual evidence or legal support for a separate claim against this division of Fidelity. In fact, Ms. McElroy does not dispute the fact that "FFAS is not and never was[] a distinct corporate entity." ECF No. 21 ¶ 5; *see*

ECF No. 36 at 1 (not disputing this fact).[7] Therefore, the Court GRANTS the Motion for Summary Judgment as to Defendant FFAS.

## II.   Breach of Contract Claim

Ms. McElroy asserts that Fidelity breached the Employee Compensation Plan with her by its "unilateral assertion . . . to seek reimbursement of what it claims were excess commissions/incentives paid to Ms. McElroy . . . as a result of what [Fidelity] claims was a manual administrative error." ECF No. 34-1 at 12; *see* ECF No. 1-1 ¶¶ 49–54 (Count VI). Fidelity avers that Ms. McElroy did not bring this claim for wages within the applicable statute of limitations. Ms. McElroy counters that this "is not a claim for unpaid wages," but rather a breach of a contractual obligation to Ms. McElroy "under the terms of the variable compensation plan, by denying her the contractual benefits to which she was due." ECF No. 34-1 at 12.

Fidelity's argument turns on whether this is actually a breach of contract claim or a Rhode Island Payment of Wages Act claim. The Payment of Wages Act allows "[a]ny employee or former employee . . . aggrieved by the failure to pay wages and/or benefits or misclassification in violation of chapter 28-12 and/or 28-14" to bring suit to obtain relief. R.I. Gen. Laws § 28-14-19.2(a). However, the statute of limitations for such a claim is only three years. *Id.* § 28-14-19.2(g). Fidelity claims that this three-year limitations period—not the ten-year period applicable to breach of contract claims—controls.

---

[7] In her briefing, Ms. McElroy asks the Court to "reserve judgment on this issue until trial." ECF No. 34-1 at 11. Because there are no facts in the record to support any claim against FFAS as a separate Defendant, the Court declines to defer.

The Rhode Island Supreme Court instructs that, in analyzing a claim for purposes of determining the appropriate statute of limitation, the Court is to "look to the substance of a claim, rather than the pleading's nomenclature." *Bisbano v. Strine Printing Co., Inc.*, 135 A.3d 1202, 1209 (R.I. 2016) (citing *Martin v. Howard*, 784 A.2d 291, 301 (R.I. 2001)).

Ms. McElroy alleges the following in her Complaint:

24. Commencing in 2012, Plaintiff was subject to a number of unilateral reductions in her commissions, predicated on the employer's assertion that she had been overpaid.

* * * * *

51. Plaintiff was entitled to certain compensation pursuant to the Employers' Compensation Plan.

52. Plaintiff fulfilled her obligations under the Employers' Compensation Plan, making her eligible for certain variable incentive compensation.

53. The Defendants unilaterally reduced Plaintiff's commissions in the year 2012 on its position that payments made to the Plaintiff in the year 2011 were erroneous.

ECF No. 1-1.

Just as was the case in *Bisbano*, Ms. McElroy's "assertion stems entirely from the allegation that [Fidelity] has failed and/or refused to provide [her] with the unpaid commissions." 135 A.3d at 1209. Ms. McElroy's claim that Fidelity deducted alleged overpayment of commissions is a claim by her for wages under the state statute. *See* R.I. Gen. Laws § 28-14-1(4) ("'Wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, *commission basis*, or other method of calculating the amount."

(emphasis added)). There is no doubt that the substance of Ms. McElroy's claim for breach of contract is one for wages, and that her wages included commissions. Therefore, the three-year statute of limitations contained in the state Payment of Wages Act applies. Because Fidelity notified Ms. McElroy in January 2012 that it sought reimbursement for overpaid wages (ECF No. 21 ¶ 85), and Ms. McElroy did not bring her Complaint until June 2015 (ECF No. 1-1), the applicable three-year statute of limitations bars this claim.

The Court GRANTS Defendants' Motion for Summary Judgment as to Count VI, breach of contract.

III. <u>Discrimination and Retaliation Claims</u>

Ms. McElroy asserts that Fidelity discriminated and retaliated against her for being pregnant and for using FMLA leave. She alleges claims under both federal and state law: the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1; the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-1; and the federal FMLA, 29 U.S.C. § 2601.

An analysis of each of the claims asserted by Ms. McElroy in her Complaint follows the same basic burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).[8] Plaintiff is required to establish a prima facie case, which shifts the burden to the employer to show a legitimate and nondiscriminatory (or non-retaliatory) reason for the alleged adverse employment action. *Id.* at 802–03. Then, if the defendant meets its burden, the plaintiff must establish that the proffered reason is a pretext for discrimination/retaliation.[9] *Id.* at 804; *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 421 (1st Cir. 1996); *Deighan v. SuperMedia LLC*, C.A. No. 14-264-S, 2016 WL 6988813, at *5 (D.R.I. Nov. 29, 2016); *Reilly v. Cox Enters., Inc.*, C.A. No. 13-785-S, 2014 WL 4473772, at *7 (D.R.I. Apr. 16, 2014); *Schumacher v. Fairfield Resorts Inc.*, C.A. No. 05-500-T, 2008 WL 821569, at *7 (D.R.I. Mar. 27, 2008).

---

[8] This framework is used to assess gender discrimination claims under both FEPA and RICRA, which are "analytically identical." *Reilly v. Cox Enters., Inc.*, C.A. No. 13-785-S, 2014 WL 4473772, at *1 n.1, *7 (D.R.I. Apr. 16, 2014). The Court conducts the same analysis under both the RIPFMLA and the FMLA. *Deighan v. SuperMedia LLC*, C.A. No. 14-264-S, 2016 WL 6988813, at *3, *5 (D.R.I. Nov. 29, 2016).

[9] There are of course some differences with respect to the prima facie elements that a plaintiff needs to establish, depending on the nature of her claim. These are set forth below. Additionally, Fidelity notes that there is a heightened causation standard in retaliation claims. Specifically, Ms. McElroy must establish the heightened "but-for" standard adopted in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013) (applying the "more demanding" but-for standard in Title VII retaliation claims); *see Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 220-21 (1st Cir. 2016) ("We must address whether the evidence is sufficient to demonstrate that [the plaintiff's] 'protected activity was a but-for cause of the alleged adverse action by the employer.'" (quoting *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014))).

Ms. McElroy alleges that Fidelity discriminated and retaliated against her in three ways: failing to give her a promised promotion at the end of 2012; assigning her to a less desirable temporary position; and constructively discharging her by eliminating her prior position when her temporary position ended. The Court will conduct the *McDonnell Douglas* analysis on the first two alleged acts of discrimination/retaliation (lack of promotion and temporary assignment) together in order to avoid analytical repetition, and then analyze Ms. McElroy's claim as to the last alleged act (constructive discharge).

### A.    Lack of Promotion and Temporary Assignment

#### 1.    Prima Facie Case

##### a.    Discrimination Claims

In order for Ms. McElroy to establish a prima facie case of discrimination, she must present evidence that 1) she is a member of a protected class (in this case that she is a woman, was pregnant, and indicated an intention to become pregnant again in the future), 2) her job performance was satisfactory, but 3) Fidelity took some adverse employment action while 4) continuing to have her duties performed by a comparably qualified person. *See, e.g., Smith,* 76 F.3d at 421. Under the *McDonnell Douglas* scheme, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981).[10]

---

[10] Fidelity first argues that the statutes of limitations contained in FEPA and Title VII bar the discrimination claim because Ms. McElroy alleges that she was not promoted in December 2012, and because she did not file her claim of discrimination

Fidelity admits, for purposes of this motion, that Ms. McElroy has made out a prima facie case of discrimination for her failure to get a promotion and raise at the end of 2012. ECF No. 20-1 at 25 n.17. However, Fidelity does challenge Ms. McElroy's prima facie case concerning her placement in a temporary position. *Id.* at 28–30. Fidelity asserts that this does not represent the required adverse employment consequence sufficient to establish a prima facie case of discrimination. *Id.*

Ms. McElroy alleges that, after returning from her FMLA leave of absence, "she was removed from her position and placed into a different, less desirable, position." ECF No. 1-1 ¶ 19. The temporary position assigned to Ms. McElroy was less desirable to her than her existing position in the wholesale area. She had recently returned from maternity leave and had the added responsibilities of caring for an infant. The interim position involved different and increased job responsibilities in the direct sales area, including increased travel and other more onerous responsibilities. Notably, Fidelity never paid Ms. McElroy the position's established salary despite her performing the duties of this position for eight months.

---

until November 2014—outside of FEPA's one-year and Title VII's 300-day statutes of limitation. However, this argument is not well taken because a jury could reasonably find that the facts set forth by Ms. McElroy represent a continuing violation of her rights. *Franchina v. City of Providence*, 881 F.3d 32, 47 (1st Cir. 2018) ("The continuing violation doctrine, in other words, allows plaintiffs to proceed . . . 'so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" (emphasis removed) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002))). Ms. McElroy's claims span from 2012 through 2014 and she has alleged them as continuous acts of discrimination.

Fidelity counters by asserting that Ms. McElroy did not suffer any adverse employment action because of her temporary assignment. Fidelity fashions this as a "reward[]" assignment "for ten years of solid work" that was a two pay grade level increase if she got the job on a permanent basis. ECF No. 20-1 at 1.

"Often, whether an employee has suffered a materially adverse employment action capable of supporting claims under Title VII is a question of law for the court." *Morales-Vallellanes v. Potter*, 605 F.3d 27, 33 (1st Cir. 2010); *see Bergeron v. Cabral*, 560 F.3d 1, 6 n.1 (1st Cir. 2009) (explaining that "the adversity vel non of that action is a legal question"), *abrogated on other grounds by Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009); *DeNovellis v. Shalala*, 124 F.3d 298, 312 (1st Cir. 1997) (characterizing as a "legal question" whether plaintiff's "sham assignment constituted an adverse employment action within the meaning of Title VII"). "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry." *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996) (citing *Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir. 1994)). "Whether an employment action is materially 'adverse'—and therefore actionable under Title VII—is gauged by an objective standard." *Morales-Vallellanes*, 605 F.3d at 35.

The evidence in this case leads to the singular conclusion that Ms. McElroy's placement in the temporary position was not an adverse employment action because she voluntarily agreed to take the position. Ms. McElroy "accepted the interim position on the spot." ECF No. 21 ¶ 40; *see* ECF No. 36 at 1 (not disputing this fact). There is no evidence of any coercion, intimidation, or threat by the employer if she

did not accept the temporary position. Ms. McElroy cannot now complain that this represents an adverse employment action, and she therefore she has failed to show a prima facie case for discrimination as to the temporary position.

The Court turns now to Ms. McElroy's prima facie case of retaliation.

### b.     Retaliation Claims

Ms. McElroy asserts a claim for illegal retaliation under two separate sets of laws that require two different analyses. The Court will deal with them seriatim.

#### i.     FEPA/RICRA/Title VII

The antiretaliation provisions of FEPA, RICRA, and Title VII make it unlawful "for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a); *see Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46–50 (1st Cir. 2010). In order to establish her prima facie retaliation claim, McElroy must establish 1) she engaged in protected conduct under the asserted statute, 2) she experienced an adverse employment action, and 3) there was a causal connection between the protected conduct and the adverse employment action. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 57 (1st Cir. 2000) (citing *Hernández-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998)); *Shoucair v. Brown Univ.*, 917 A.2d 418, 427 (R.I. 2007).

Fidelity asserts that Ms. McElroy fails to make out a prima facie retaliation claim under FEPA, RICRA, and Title VII because she does not establish that she "opposed" any "protected conduct" under any of the relevant statutes. Ms. McElroy

offers no evidence to support that she "opposed" any "protected conduct." For example, there is no evidence that she complained about any gender-based discrimination, pregnancy discrimination, or FMLA discrimination. Moreover, she did not oppose any discriminatory practice by Fidelity. While she asserts now that she suffered these types of discrimination, there is no evidence that she complained about them to her employer and that Fidelity took some adverse action as a result. Because of the lack of evidence that Ms. McElroy opposed a discriminatory practice, her claims for retaliation under FEPA, RICRA, and Title VII must fail.

### ii.    FMLA/RIPFMLA

Fidelity asserts that Ms. McElroy has not produced evidence to establish a prima facie case of retaliation under the FMLA because she has not proven causation. Fidelity says there is no causation between Ms. McElroy informing her supervisor that she was pregnant and intended to take FMLA leave and her failure to receive a promised promotion. Ms. McElroy counters by saying that the closeness in time between her notification and the adverse employment action is sufficient in this context to establish causation. Fidelity counters that temporal proximity is insufficient to establish causation.

While temporal proximity alone may be insufficient to prove pretext, it can be relevant evidence when combined with other facts. *Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 10 (1st Cir. 2012); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that temporal proximity alone is generally not enough unless it is "very close"). The First Circuit has found a period of roughly one

month between the protected activity and the adverse employment action to be sufficiently close. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 26 (1st Cir. 2004).

A jury could reasonably decide that a few weeks between Ms. McElroy telling her employer she was pregnant and not being promoted is "very close" in time and therefore sufficient to establish causation. This is especially true in combination with the fact that Fidelity promised Ms. McElroy the promotion before she told them she was pregnant. A jury could reasonably decide that being promised a promotion, then telling her supervisors she is pregnant, and then being denied a promised promotion—occurring in a matter of weeks—is sufficient to establish causation.

To summarize, Ms. McElroy has established a prima facie case of discrimination and FMLA retaliation in being denied a promotion. She has not established a prima facie discrimination claim for her temporary assignment or any retaliation claim under the FEPA, RICRA, or Title VII.

### 2. Nondiscriminatory Reason

At the second step of *McDonnell Douglas*, Fidelity must establish a nondiscriminatory or non-retaliatory reason for not promoting Ms. McElroy. Fidelity presents evidence "that the business conditions did not support promotions at that time." ECF No. 20-1 at 27. Fidelity's senior vice president Mr. Pickens testified:

> Q. [W]hy would the environment not have been conducive to a promotion?
>
> A. During those periods -- those years, it was a very difficult time within our business.
>
> Q. Why?

> A. We were in a historically low rate environment. Our
> products are tied to the fed and the interest rates.

ECF No. 21-3 at 18.

An economic reason for not promoting an employee is a legitimate reason that fulfills the second prong of the *McDonnell Douglas* analysis. Having set forth a legitimate nondiscriminatory reason for the lack of promotion, the Court turns to Ms. McElroy's attempt to establish that this nondiscriminatory reason was merely a pretext for prohibited discrimination.

### 3.    Pretext

The final step of the *McDonnell Douglas* framework requires the plaintiff to prove that the defendant's reason for the adverse employment action was merely a pretext for discriminatory animus. The First Circuit recently explained that "[o]ne method of showing that an employer's stated reasons are pretextual 'is to produce evidence that the plaintiff was treated differently than other similarly situated employees.'" *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 424 (1st Cir. 2017) (quoting *Kosereis*, 331 F.3d at 214). "While the 'examples of disparate treatment need not be perfect replicas . . . they must closely resemble one another in respect to relevant facts and circumstances.'" *Id.* (alteration in original) (quoting *Kosereis*, 331 F.3d at 207). "In other words, when comparing the plaintiff's experience to that of other employees, 'apples should be compared to apples.'" *Id.* (quoting *Woodward v. Emulex Corp.*, 714 F.3d 632, 639 (1st Cir. 2013)).

Ms. McElroy claims that Fidelity promoted a "similarly situated" male co-worker, James Scalisi, at the same time that Fidelity denied Ms. McElroy a promised

promotion. She asserts that Fidelity admits that he was subjected to the "same business exigencies that prevented" her promotion. ECF No. 34-1 at 16. She points to this fact as evidence that Fidelity's explanation for the lack of promotion was merely a pretext for prohibited discrimination:

> Scalisi, a male, was promoted from a Regional Vice President position to Vice President, the same promotion that had been promised to McElroy. According to Marsilia, the two individuals were working in different areas, but both reported ultimately to Marsilia and both worked in the FILMS group. Marsilia asserts that a promotion went to Scalisi because of performance-based reason(s), but no evidence was produced to show that McElroy was not as productive. Importantly, Pickens testified that the same economic factors that impacted McElroy's promotion existed for the entire business, and existed with respect to Scalisi.

*Id.* at 4 (citations omitted).

Fidelity counters that Ms. McElroy offers no evidence that its stated reason for not offering her the promotion—that business conditions did not support her promotion at that time—was a pretext. It asserts that Mr. Scalisi's promotion has no bearing on this case because he is not similarly situated to her in all relevant respects:

> Jim Scalisi, a Regional Vice President in the direct channel of FILMS group was promoted in or about January 2013. Specifically, Fidelity promoted him because he was in the direct channel – the "much more profitable business" and had "relocated his family to Chicago for [a] position[,] [h]e worked in Chicago in that territory for a couple of years, and developed a very successful business [and], was a top performer among the direct team. And then [Fidelity] had someone voluntarily vacate a territory in the southwest, and [Fidelity] asked [Mr. Scalisi] to take that territory in addition to his current territory, so he was basically covering twice the amount of clients and territory as other people. And he proceeded to do an outstanding job with that, and that was the point where [Fidelity] promoted him to the vice president level." Mr. Pickens was not involved with the direct distribution team and therefore he was not involved in Mr. Scalisi's promotion.

ECF No. 20-1 at 5 n.3 (alterations in original) (citations omitted).[11]

"[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998) (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983)). The Court finds that, while it is a close call, Ms. McElroy has put forth sufficient evidence for a jury to find that Fidelity's reason for denying her the promotion was merely pretext for discriminatory animus. A jury could find that Ms. McElroy and Mr. Scalisi were sufficiently similarly situated that the only explanation for why Ms. McElroy was denied a promised promotion but Mr. Scalisi was given one was because Ms. McElroy was a woman who told her employer that she was pregnant and intended to exercise her FMLA rights. Therefore, summary judgment is not appropriate.

B.    Constructive Discharge

Ms. McElroy asserts that Fidelity constructively discharged her by eliminating her prior position as regional vice president covering the northeast territory, and having no position for her to return to when her temporary assignment ended. Fidelity counters by claiming that this does not equal a "constructive discharge" and

---

[11] Fidelity also asserts that it could not have subjected Ms. McElroy to discrimination or retaliation in not getting her promised promotion because Fidelity also denied a male, Jason Campellone a promotion. ECF No. 39 at 10–11. While this may be a factor to be presented to the jury along with all of the other evidence, it is not dispositive of Ms. McElroy's discrimination and retaliation claims.

therefore that Ms. McElroy did not suffer any adverse employment action necessary to establish a prima facie case of discrimination or retaliation. Fidelity asserts that it never reached the point where Ms. McElroy no longer had a position with Fidelity.

To prove constructive discharge, a plaintiff must show that the "conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *Mercado-Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 52 (1st. Cir. 2005) (quoting *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 54 (1st Cir. 2000)); *accord Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 45 (1st Cir. 2003); *see also EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 134 (1st Cir. 2014) (holding that working conditions must have been so intolerable that the employee's decision to resign was "void of choice or free will"). The standard to use to determine whether a reasonable person would have felt compelled to resign is an objective one—an employee's subjective perceptions do not govern. *Lee-Crespo*, 354 F.3d at 45 (citing *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir. 2000)).

The evidence before the Court does not support a finding that Ms. McElroy's conditions of employment had become so onerous, abusive, or unpleasant that a reasonable person in her position would have felt compelled to resign. Ms. McElroy suggests that she was forced to resign because Fidelity told her that it eliminated her specific regional vice president position. However, there is no evidence that there would not be another suitable position available for Ms. McElroy once the temporary

position ended. Ms. McElroy made the voluntary decision to resign without first engaging in any kind of conversation about opportunities for her future at Fidelity.

Although some cases have held that after a job is eliminated, a plaintiff who quits may have a claim for constructive discharge, the fact here is that Ms. McElroy never got to the point where she no longer had employment at Fidelity. All she knew when she resigned was that she believed she could not return to the regional vice president role. She never sought or received any clarification from Fidelity about how long she could continue to work in the interim role or whether there would be other opportunities for her. There is no evidence in this case, and no reasonable inferences to be drawn therefrom, such that a reasonable employee could think that termination was imminent. This precludes Ms. McElroy's constructive discharge claim. *See Slater v. Town of Exeter*, C.A. No 07-407-JL, 2009 WL 737112, at *7 (D.N.H. Mar. 20, 2009) (noting that "comments [do] not occur in isolation" and that "[n]o reasonable employee could think termination was imminent based on statements from [the plaintiff's] supervisor expressing an intent that she continue working there").

The Court need go no further. Ms. McElroy's claim for discrimination and retaliation based on her alleged constructive discharge are dismissed.

IV.  Conclusion

Defendants' Motion for Summary Judgment (ECF No. 20) is GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants' Motion for Summary Judgment is GRANTED as to:

    a. Defendant Fidelity Financial Advisor Solutions;

    b. Plaintiff's breach of contract claim;

    c. Plaintiff's claims for retaliation based on FEPA, RICRA, and Title VII;

    d. Plaintiff's claim for discrimination and retaliation based on her temporary assignment; and

    e. Plaintiff's claim for constructive discharge.

2. Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's claim for discrimination and FMLA/RIPFMLA retaliation arising from the lack of promotion at the end of 2012.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

March 22, 2018